**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 08:13 AM September 27, 2012**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| DENNIS ROBERT SALAPACK, | ) | CASE NO. 09-63146 |
| | ) | |
| Debtor. | ) | JUDGE RUSS KENDIG |
| | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT FOR PUBLICATION)** |
| | ) | |

     On January 12, 2012, Debtor filed a chapter 11 reorganization plan. The United States Internal Revenue Service ("IRS") filed an objection to the plan on March 30, 2012. A hearing was held on May 24, 2012, attended by Anthony J. DeGirolamo, counsel for Debtor, and Assistant U.S. Attorney Marlon A. Primes on behalf of IRS. Following the hearing, each party submitted a brief. The issue is whether Debtor's separation of general unsecured claims into two classes based on an unrelated agreed order resolving an objection to discharge, where one class of general unsecured claims will receive payment in full and the other class of general unsecured claims will receive nothing, renders the plan unconfirmable?

     The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984, now superseded by General Order 2012-7 dated April 4, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). In accordance with 28 U.S.C. § 1409, venue in this district and division is proper.

1

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## BACKGROUND

Debtor filed a joint chapter 7 petition with his wife on July 31, 2009. In January 2011, the case was severed. His wife obtained a discharge on January 13, 2011 and her case is now closed.

On May 28, 2010, the United States Trustee ("UST") filed a § 727 action seeking to deny Debtor's discharge. On December 17, 2010, the adversary proceeding was resolved by an agreed order. Mr. Salapack waived his discharge but agreed to convert his case to chapter 11. The agreed order contained the following provision:

> 3. Debtor shall pay in full in the chapter 11 case all unsecured claims that have been filed through December 6, 2010, which claims are in the amount of approximately $184,000.00.

The agreement also provided that if Debtor successfully completes payments under a chapter 11 plan, he will be entitled to a discharge and his waiver of discharge will be vacated. He converted his case on February 10, 2011.

IRS was not involved in the negotiation of the agreed order resolving the UST's adversary proceeding, nor was the agency served with any type of notice of the agreement.

At the time Debtor and UST entered into the agreed order, the IRS amended proof of claim 6-3 totaled $383,823.62. $367,100.10 was identified as secured; $15,278.38 was listed as priority, and $1,445.14 was categorized as general unsecured. The bulk of unsecured claims filed at the time of the agreement were held by other creditors.

IRS has since amended its claim twice. The total amount of the most recent claim, proof of claim number 6-5, is unchanged from proof of claim 6-3. However, the breakdown is considerably altered. Now, only $20,750.00 is secured, while $347,795.24 is classified as general unsecured. The priority amount remains the same. The change results from an agreed order between Debtor and IRS adjusting the value of Debtor's collateral securing the tax lien. (Agreed Order Granting Objection to Claim #6, ECF No. 145)

Debtors' chapter 11 plan provides for two separate classes of general unsecured claims. Class C claims are defined as "Allowed Claims that are General Unsecured Claims of creditors that Filed unsecured Proofs of Claims before December 6, 2010 pursuant to the Court's Order dated October 21, 2011 (Docket No. 145). Such Claims are listed on Schedule II.C." (Debtor's Plan of Reorganization ¶ II(B)(2)(b), ECF No. 154) Debtor proposes to pay Class C claims in full. Class D claims are the "Allowed Claims that are General Unsecured Claims. Class D

2

includes Creditors of the Debtor that Filed unsecured Proofs of Claim after December 6, 2010, pursuant to the Court's Order dated October 21, 2011 (Docket No. 145), and the unsecured portion of Claims filed other than as unsecured Claims before December 6, 2010. Such claims are listed on Schedule II.D." (Id.) Class D will not receive any distribution under the plan.

## DISCUSSION

Debtor's plan proposes to pay a portion of the general unsecured debt 100% (Class C) while paying the other portion 0% (Class D). The IRS has a general unsecured claim in excess of $300,000 which Debtor classified in Class D. Debtor contends that the discrimination between the classes of general unsecured claims is permissible. The separate classification is based on an agreement Debtor reached with the UST prior to the chapter 11 conversion which resolved the UST's adversary to deny Debtor's discharge. Among other items, the agreement provided that, in exchange for the opportunity to obtain a discharge under chapter 11, Debtor would pay unsecured claims filed through December 6, 2010 in full. At the time the agreement was executed, the unsecured portion of the IRS claim was less than $1,500. A later amendment increased the unsecured portion of the claim to more than $300,000, although the total amount of the claim never changed.[1] Class C claims include unsecured claims that had been filed at the time the agreed order was executed. Class D claims include the unsecured claims filed after the agreed order, as well as amended claims that reclassified debt to unsecured status, regardless of the original filing date.[2]

Chapter 11 plan requirements include an anti-discrimination provision. 11 U.S.C. § 1123(a)(4). Under this section, a plan must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." Id. IRS relies on this code section for much of its argument but this reliance is misplaced. The question at the heart of the issue is whether the *classification* is appropriate. As Collier's recognizes, "[t]he distinction should always be drawn, therefore between the separate but related issues of classification (under 1122(a)) and treatment (under 1123(a)(4)) of a claim once it has been classified in accordance with section 1122." 7 Collier on Bankruptcy ¶ 1102.02, 1122-4 (16th ed. 2011). As far as Class D claims are concerned, the IRS claim is treated exactly as all other claims in Class D. Consequently, there is no violation of § 1123(a)(4). Classification of claims into separate classes is governed by 11 U.S.C. § 1122(a).

Section 1122(a), in its entirety, provides "[e]xcept as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." The statute prohibits placing "dissimilar claims" into the same class. Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.), 800 F.2d 581, 585 (6th Cir. 1986). Debtor argues that the

---

1 The amendment merely reclassified the bulk of the secured portion of the claim as unsecured.
2 One other claim directly parallels IRS' claim. On December 18, 2009, Peoples Bank NA filed a secured claim for $335,220.51. The claim was amended on November 29, 2011 and is now an unsecured claim for $188,390.25. The remaining claims in Class D were filed after December 6, 2010.

3

claims in Class C and Class D are not similar, thereby supporting their separate classification.  His classification scheme attempts to dissimilate unsecured claims from one another based on the agreement between Debtor and UST.  He argues that the agreed order created a de facto class of non-dischargeable unsecured claims, Class C.  The court finds this is an artificial attempt to designate the nature of the claims.

The nature of a claim is determined in relationship to the debtor or estate, not others, such as third-party guarantors.  In re Dow Corning, 255 B.R. 445, 500 (E.D. Mich. 2000) (citing In re AOV Indus., Inc., 792 F.3d 1140, 1150 (D.C. Cir. 1986) (stating "the focus of the classification is the legal character of the claim as it relates to the *assets of the debtor*" (emphasis original) (citations omitted)).  The nature of a claim is also one of the keys to determining whether it is substantially similar to other claims.  "Substantially similar" claims are those that are 'similar in legal nature, character or effect."  Id. at 495 (citing In re Dow Corning Corp. (Classification and Treatment Op.), 244 B.R. 634, 644 (Bankr. E.D. Mich. 1999)).  All of the claims in Class C and Class D meet this definition.  The claims are general, non-priority, unsecured claims held against the same property.  Debtor's classification system focuses on the relationship of the claims to one another vis a vis the agreed order between Debtor and UST, not the property of the estate, and therefore disregards the true legal nature of the claims.  Debtor's voluntary agreement to repay some of the claims does not change the inherent characteristics of the claims.  Consequently, the court does not agree with Debtor's assessment that the claims are dissimilar and therefore require separate classification.

Upon finding the claims are substantially similar, the court must now determine whether the claims can be separately classified.  There is no requirement that similar claims must be placed in the same class.  U.S. Truck, 800 F.2d 581.  However, the Sixth Circuit recognized a potential danger in allowing similar claims to be separately classified, stating, "[u]nless there is some requirement of keeping similar claims together, nothing would stand in the way of a debtor seeking out a few impaired creditors (or even one such creditor) who will vote for the plan and placing them in their own class."  Id. at 587 (footnote omitted).  The debtor in U.S. Truck admitted to gerrymandering the classes in order to obtain plan approval.  Id at 587 fn. 8.  Consequently, the court recognized that "there must be some limit on a debtor's power to classify creditors in such a manner."  Id.

The Sixth Circuit did not enunciate a clear standard to govern the classification of similar claims, noting that "the legislative history of the Code provides little assistance in determining what limits there are to segregating similar claims."  Id. at 587.  It affirmed use of the "broad discretion" previously afforded by courts based on the factual circumstances of each individual case.  Id. (citing John C. Anderson, *Classification of Claims and Interests in Reorganization Cases Under the New Bankruptcy Code*, 58 AmBankr.L.J. 99, 107 (1984) (other citation omitted)).  It also outlined, and approved, the rationales used in two cases rejecting classification schemes where allegedly similar claims were placed in the same class.  *See* First Nat'l Bank of Herkimer v. Poland Union, 109 F.2d 54 (2d Cir. (1940); Am. United Mut. Life Ins. Co. v. City of Avon Park, 311 U.S. 138 (1940).  In the former, two of the largest creditors in the class were also shareholders who benefitted under the plan under a release of liability provision.   In the latter, an insider stood

to profit under the plan and it was not clear that his interest had been disclosed during the solicitation phase. In both cases, although the debtor treated the claims as similar claims, the courts found that the disparate nature of the claims rendered them dissimilar and therefore subject to separate classification.

Ultimately, U.S. Truck was decided on comparable grounds to these two cases. The Sixth Circuit determined that the claims were dissimilar, mandating their separate classification. In U.S. Truck, the debtor created two separate classes including rejection claims, one for the claim arising from rejection of a union's collective bargaining agreement and one class for secured creditors, including those with rejection claims. The union argued that its claim was similar to the other rejection claims and therefore should be classified with those claims. The court disagreed, finding three reasons the claims were different, thereby destroying any foundation for the claims to be placed in the same class. U.S. Truck left open the question of when it is permissible to segregate similar claims. *See* Dow Corning, 255 B.R. 445; Dow Corning (Classification and Treatment Op.), 244 B.R. 634; In re Eagle-Picher Ind., Inc., 203 B.R. 256, 270 (S.D. Ohio 1996); In re Snyders Drug Stores, Inc., 307 B.R. 889, 893 (Bankr. N.D. Ohio 2004). Cases attempting to discern U.S. Truck's import have resulted in two lines of thought.

The first, advanced by the District Court for the Eastern District of Michigan, is premised on the belief that "the only inquiry a bankruptcy court is required to make under § 1122(a) is whether the claims within a class are substantially similar." Dow Corning, 255 B.R. at 496. In Dow Corning, the district court took a very narrow view of U.S. Truck, concluding it allows for separate classification of similar claims "unless the classification is used to line up votes in favor of the plan, or if a shareholder and creditors who are not intimately connected with the enterprise are placed together, or where a breach of fiduciary obligation or unfair dealings are at issue." Dow Corning at 496. It rejected the bankruptcy court's requirement that classification be justified by a legitimate purpose. Id. (referencing Dow Corning (Classification and Treatment Op.), 244 B.R. 634). First, it pointed out that the Sixth Circuit did not specifically enunciate a "legitimate reason" standard. Second, it found that requiring a "legitimate reason" results in a higher burden than merely determining whether the claims are substantially similar. Dow Corning, 255 B.R. at 497.

The court rejects this approach because it fully ignores the Sixth Circuit's implicit recognition of a court's broad discretion to review classification schemes on the facts of each case. Merely determining whether the claims in a class are substantially similar eliminates the court's ability to consider one class against another. When similar claims are separately classified, this is the key determination. The court reads U.S. Truck to allow for this review. As a result, the court will follow the second line of cases, which impose a legitimate purpose requirement on classification systems separating similar claims into different classes. *See* Eagle-Picher, 203 B.R. 256; Snyders Drug Stores, Inc., 307 B.R. 889.

As outlined above, U.S. Truck did not squarely address the classification of similar claims in different classes. U.S. Truck simply established the outside parameters of when segregating similar claims was impermissible. Otherwise, it sanctioned use of the court's discretion to

5

determine whether to uphold a separate classification system for similar claims. The court also notes that U.S. Truck favorably cited the John C. Anderson journal article that operated under the "general rule . . . that all creditors of equal rank with claims against the same property should normally be placed in the same class" and which fully advocated the placement of unsecured creditors in the same class. Anderson, *Classification of Claims and Interests*, 58 AmBankr.L.J. at 117. The court finds that in order to deviate from the general rule desegregating similar claims, there must be a legitimate reason.

In Eagle-Picher, the court recognized a two-step inquiry: "[a] classification scheme satisfies section 1122(a) of the Bankruptcy Code when a reasonable basis exists for the classification scheme, and the claims or interests within each particular class are substantially similar." Eagle-Picher, 203 B.R. at 270 (citations omitted). Snyder's Drug found that "[t]o justify a separate classification, the debtor must prove that there is a legitimate business reason supporting the classification." Snyder's Drug, 307 B.R. 889 at 893 (citing Boston Post Road Ltd. P'ship v. FDIC (In re Boston Post Road Ltd. P'ship), 21 F.3d 477, 483 (2nd Cir. 1994) (other citation omitted)). The court agrees with the courts imposing a legitimate purpose requirement for the separate classification of similar claims.

Debtor relies on the agreed order with the UST to serve as his legitimate purpose in separating the unsecured claims into different classes. The court cannot agree. As stated above, use of the agreed order in this way is an artificial designation of the nature of the claims. Although Debtor argues that the agreed order created the equivalent of a nondischargeable set of unsecured claims, this is a fictitious legal construct. The agreed order did nothing to alter the true legal nature of the claims. The unsecured claims in Classes C and D are legally dischargeable.

In the same manner, Debtor's attempt to use the date of the agreed order as the dividing line between who gets paid and who doesn't bears no relationship to a legally recognized precept in the bankruptcy code or rules. It is simply Debtor's maneuvering to escape from what now has become an unfeasible plan. It is particularly grievous with regard to the amended claims in Class D because it treats them as a new claims, which they are not. *See, e.g.,* In re Channakhon, 465 B.R. 132 (Bankr. S.D. Ohio 2012) (relying on Fed.R.Civ.P. 15(c)); In re Spurling, 391 B.R. 783 (Bankr. E.D. Tenn. 2008). The amended IRS claim contains the same total amount due and is for the same tax years as the original claim. A large portion of the amount which was secured is now identified as unsecured, akin to amendments made for unsecured deficiency claims. As Channakhon points out, these types of claims are generally found to relate back to the original claim because they arise from the same original transaction. Id. at 141 (citations in support and footnote to contrary omitted). Debtor's attempt to shoehorn the IRS amended claim with the post-agreement claims assails the claim's legal status as arising on the date the claim was filed.

Further, Debtor's reliance on the agreed order is particularly concerning because of its unilateral provenance. None of the Class D claimants were involved in the adversary that resulted in the agreed order and therefore had no opportunity to weigh in on it. Even if they had received notice of the agreed order, its impact was not apparent because it did not address future unsecured claims. It was not apparent at the time of the agreed order that unfiled, unknown unsecured

6

claims would not be paid anything. Debtor's attempt to now hold these claims hostage to the agreed order between Debtor and UST violates the principles of due process.

The court finds no legitimate reason for Debtor's use of the agreed order between Debtor and the UST as a basis for distinguishing the IRS claim, or any claims in Class D, from other unsecured claims. Consequently, Debtor's classification system cannot be approved.

## CONCLUSION

Section 1122(a) prohibits the classification of dissimilar claims in the same class. Debtor argues that the unsecured claims in Classes C and D are dissimilar and must be separately classified. The court disagrees, finding the claims are substantially similar. The unsecured claims are unsecured against the same assets of the debtor and therefore are of the same nature, character and effect. Consequently, they do not have to be separately classified.

Although there is no outright prohibition on segregating similar claims, a legitimate purpose must support such a classification scheme. Debtor's reliance on an agreed order between itself and the UST is not a permissible foundation for separating the unsecured claims into two classes. Contrary to Debtor's arguments, the claims are not the equivalent of nondischargeable claims, but are of a legally dischargeable character. Any nondischargeability flows from other facts. Using the date of the order to determine who gets paid and who does not disregards the nature of the underlying claims. With regard to amended claims, it ignores established case law and fails to related amended Class D claims back to the date of their original filing. Further, it does all of this without any concern for the due process rights to those who did not participate in, or have notice of, the agreement between Debtor and UST. Consequently, the court finds that separate classification of the unsecured claims violates 11 U.S.C. § 1122(a), rendering the plan unconfirmable.

An order in accordance with this opinion will be entered immediately.

#   #   #

**Service List:**

Anthony J DeGirolamo
116 Cleveland Ave., N.W.
Suite 307
Canton, OH 44702

Marlon A. Primes
Asst. U.S. Attorney
Carl B. Stokes U.S. Courthouse
801 W. Superior Ave., Suite 400
Cleveland, OH   44113